27 C.C.P.A. (Patents)

## In re VOLWILER, et al.
## Patent Appeal No. 4350.

Court of Customs and Patent Appeals.
July 1, 1940.

Fisher, Clapp, Soans & Pond, of Chicago, Ill. (Cyril A. Soans and Lawrence D. Dibble, both of Chicago, Ill., and George A. Degnan, of Washington, D. C., of counsel), for appellants.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner denying patentability, in view of prior art cited, of two claims numbered, respectively, 1 and 2, in an application for patent entitled "2-Ethyl Butyl Derivatives of Barbituric Acid." Both are product claims, and the brief for appellants states "The process which they used is not claimed to be novel."

The product is a pharmaceutical composition stated to have utility in the medical art. The brief on behalf of appellants states: "More specifically, the subject matter of the invention involved in this appeal is directed to certain alkyl, i. e., hydrogen-carbon, substituted barbituric acids having unique hypnotic and sedative action."

In presenting the case before us counsel for appellant emphasized claim No. 2, and conceded that if it be properly rejectable on the ground of anticipation by prior art claim 1 is rejectable for the same reason. In view of this concession it is sufficient to quote only claim 2 for illustrative purposes. It reads:

2. An ethyl, (2-ethyl butyl) barbiturate having the formula:

$$C_2H_5 \diagdown$$
$$\phantom{C_2H_5}CHCH_2$$
$$C_2H_5 \diagup$$

$$CH_3CH_2 \diagup$$

$$\begin{array}{ccc} CO & \!\!\!-\!\!\! & NH \\ | & & | \\ C & & CO \\ | & & | \\ CO & \!\!\!-\!\!\! & NX \end{array}$$

wherein X is one of the group consisting of hydrogen, alkali and alkaline earth metals, and primary and secondary alkyl amines, the free acid represented by the above formula when X is hydrogen having a melting point of 133°-134° C.

The references cited in the decisions of the tribunals of the Patent Office respecting the two claims on appeal are: Shonle, 1,977,561, Oct. 16, 1934; Journal

de Pharmacie et de Chimie, 14 (1931) pages 514 to 527.

The first of the foregoing references is a United States patent. It was made a secondary ground of rejection by the examiner. Except to name it as a part of the prior art. the board made no reference to it, but rested its decision upon the second reference which appears to be an article prepared by two individuals, named, respectively, E. Fourneau and J. Matti, appearing in a scientific journal bearing the name stated. It is usually referred to in the record and briefs as the Fourneau reference, and we so refer to it. The translation of the quotation from it before us refers to "Preparation of a new hypnotic: Ethyl—(2-Ethylbutyl) barbituric acid," and embraces a formula which counsel for appellants concede to be substantially identical with the formula quoted in claim 2, supra.

Notwithstanding this concession as to the substantial similarity of the respective formulae, however, it is contended on behalf of appellants that their product, in fact, differs from the product of the Fourneau reference. This contention, as we understand it, is based upon an alleged difference in the melting point of the hydrogen element in the free acid, which acid in each instance results from the use of the described formula. It will be noted that the last clause of count 2, supra, reads "the free acid represented by the above formula when X is hydrogen having a melting point of 133°–134° C." In the Fourneau reference after describing the method which results in a first crystallization, it is said, "The product is recrystallized from a mixture of ether and petroleum ether. After two crystallizations there is obtained a white product melting at 125°."

It is said in the brief on behalf of appellants:

"That the melting point of a compound may be used as a means of identification is well known and this Honorable Court can take judicial knowledge of the same.
* * *

"The 8–9°C. difference in melting point between the product tested by Fourneau and the Volwiler and Tabern product is conclusive proof to those skilled in the art that the products could not be the same. The difference in melting point cannot be explained by the use by Fourneau of an impure product, for as indicated above Fourneau's combustion test (in which the test percentages check with the calculated or theoretical values for carbon (C) and hydrogen (H) show the Fourneau product to be pure. The only explanation for the difference in melting point is that the Fourneau and the Volwiler and Tabern products could not be the same, i. e., that they both could not be 2-ethyl butyl, ethyl barbituric acid."

The foregoing view evidently was urged before, and considered by, the examiner who in his statement following the appeal to the board, after reciting the showing of the Fourneau article, said:

"Claims 1 and 2 are accordingly rejected on Fourneau. Applicant argues against this rejection on the ground that his product melts at 133°–134° while that of Fourneau melts at 125°. This difference is not considered to establish lack of substantial identity between the product of Fourneau and that of the claims. Fourneau discloses a method the practice of which will lead to the claimed product. This is sufficient to enable those skilled in the art to prepare such product.

"It may be that applicants' product is purer than that of Fourneau, but it has neither been alleged nor proven that such difference renders applicants' product either more useful or useful in a different relation than the product of Fourneau. The Fourneau product is indicated to be of high pharmacological utility (pages 723–26). That is all that is alleged for applicants' products. Generally a product is not again patentable merely because prepared in a purer form than those of the prior art. Ex parte Windhaus 15 U. S.Pat.Q. 45. Ex parte Lautenschlager, file of patent 1,940,174. Only in those cases where the purified product is as a result of the purification so different in properties and uses as to be in effect a new compound has such a purified product been considered patentable. The instant case does not come under this exception."

We do not find the matter discussed so specifically in the decision of the board, the text of which indicates that certain matters of method, not particularly emphasized before us, may have been argued there.

As has been stated, the claims on appeal are product claims, claim 2 being specifically for "An ethyl, (2-ethyl butyl)

**136**

barbiturate" resulting from the use of the specific formula recited. The Fourneau article names the same product produced by use of substantially the same formula.

Under such circumstances, we are unable to discern wherein the decision appealed from properly may be held to be erroneous.

If method claims were here involved and there was a showing that appellants' method differed in material respects from the method employed in the prior art we would be confronted by a different situation, but such is not the case.

We are of the opinion that the claims on appeal were properly rejected, and the decision of the board is affirmed.

Affirmed.